NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LONG BRANCH CITIZENS AGAINST HOUSING DISCRIMINATION, INC., DAN PIRES on behalf of himself and all other tenants similarly situated, ELLIOTT KOPLITZ, LEON SHAMA and TAMARA ZONANA on behalf of themselves and all other property owners similarly situated, JOHN DOE on behalf of himself and all prospective tenants,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LONG BRANCH, the MAYOR AND COUNCIL OF THE CITY OF LONG BRANCH, ADAM SCHNEIDER, MARY JANE CELLI, MICHAEL DeSTEFANO, DAVID BROWN, JOHN ZAMBRANO, ANTHONY GIORDANO,<br><br>Defendants. | Civ. No. 04-4402 (GEB)<br><br>**OPINION** |

**BROWN, District Judge**

This matter comes before the Court upon Defendants' motion for partial summary judgment pursuant to Federal Rules of Civil Procedure Rule 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will grant Defendants' motion.

**I.    BACKGROUND**

   **A.    The Parties**

Plaintiff Long Branch Citizens Against Housing Discrimination, Inc. ("Long Branch Citizens") is a non-profit corporation organized under the laws of New Jersey. (Compl. ¶1.) Its

stated purpose is "to fight housing discrimination in its many forms as it exists in the City of Long Branch." (*Id.*) Long Branch Citizens asserts that it consists of members that include owners of properties in the City of Long Branch ("the City" or "Long Branch"), as well as current and prospective tenants of Long Branch. (*Id.*) Plaintiff Tamara Zonana is an owner of property in Long Branch and a member of Long Branch Citizens. (*Id.* ¶3; Fodera Cert. Ex. B). Plaintiffs Elliott Koplitz and Leon Shama are also owners of properties located in Long Branch. (Compl. ¶3.) Plaintiff Dan Pires is a student at Monmouth University and resides as a tenant in Long Branch. (*Id.* ¶2.)

Defendant City of Long Branch is a municipal corporation organized under the laws of New Jersey and located in Monmouth County. (*Id.* ¶5.) The remaining defendants are offices or officers of the Long Branch city government. (*Id.* ¶¶6-12.)

### B. Long Branch's History of Student Residents

Long Branch is an oceanfront community consisting of approximately 32,000 residents living in an area of over five square miles. (Hayes Cert. ¶9.) During the academic year between September and May, the City experiences an influx of college students from nearby institutions, including Monmouth University and Brookdale Community College, who rent off-campus housing in Long Branch. (*Id.* ¶10.) The large concentrations of students result in a variety of disturbances to local residents, including noise, instances of public urination, litter and late night parties. (*Id.* ¶2.) It also creates fire risks for the students living in single-family houses because those houses lack safety features designed for multi-person occupancies, including fire suppression systems, fire safety features and construction safety elements. (*Id.* ¶¶2, 65.)

In response, the City took a number of steps to alleviate the quality-of-life and safety problems caused by the high concentrations of students. To address the quality-of-life problems faced by non-student residents, the City: (1) formed a Quality of Life Task Force to reduce the number of disturbances caused by the students; (2) prosecuted property owners based on their

tenants' disorderly conduct; and (3) prosecuted tenants for violation of local ordinances, such as those regulating noise levels. (*Id.* ¶¶14-17.) Despite these efforts, disturbances by student residents continued to be a problem. (*Id.* ¶18.)

The City also took steps to address its safety concerns, including implementing a "meet and greet" program with student residents. (*Id.* ¶21.) Under that program, each September, the Fire Official and local police officers would visit properties rented by students to discuss the problems that might result from large groups of students living in single-family properties. (*Id.*) The City, however, remained concerned about the safety risks to the students posed by their living conditions.

###    C.    Long Branch's Enactment of Ordinances 26-04 and 27-04

To address these ongoing problems, on July 27, 2004, the Council of the City of Long Branch passed two ordinances designed to limit the renting of single-family residences to large numbers of student tenants. (Fodera Cert. ¶5, Ex. A.) They were named Ordinance 26-04 and Ordinance 27-04 (collectively "the Ordinances"). (Fodera Cert. Ex. A.) According to the legislative findings expressed in both Ordinances:

> the City of Long Branch has [experienced] numerous [situations] where premises are being rented, without any owner occupancy, and in an attempt to avoid the permanency and stability of the area, to groups of individuals who are not related by blood or marriage under the guise of an equivalent functional family unit through leases which are not enforced [and] consequently, the premises in question resemble and are more [like and] akin to boarding houses and/or rooming houses which have a tendency to destroy the characteristics of stability, permanence, quiet[,] and repose that [are] inherent [in] and truly characteristic of residential neighborhoods . . . .

(Ordinance 26-04; Ordinance 27-04.) The Ordinances were enacted "to perpetuate stability, permanence and other beneficial attributes[] long associated with single family occupancy . . . [and to] preclud[e] uses closely approximating boarding houses, dormitories, and institutional living facilities within residential zones throughout the City . . . ." (Ordinance 26-04; Ordinance 27-04.)

3

Enforcement of the Ordinances would have two primary effects.  First, Ordinance 26-04 amends certain definitions in the City's zoning and property maintenance ordinances concerning families and Certificates of Occupancy ("Certificates").  (Hayes Cert. ¶¶29-32; Fodera Cert. ¶3.) Certificates are to be "issued by the Fire Prevention Bureau prior to a change of occupancy of any building[,]" and Ordinance 26-04 would limit each property, located in certain residential zoning districts, to one Certificate per year, unless the property qualified for certain exceptions described in the Ordinance.  (Ordinance 26-04.)  Second, Ordinance 27-04 changes the requirements that property owners would need to satisfy in connection with the Certificates.  (Hayes Cert. ¶¶26, 33-36.)

On September 10, 2004, Plaintiffs filed the complaint in this action challenging the lawfulness of the Ordinances.  Plaintiffs assert numerous claims based on federal and state law. With respect to federal law, Plaintiffs claim that the enactment of the Ordinances violated their rights pursuant to:  (1) the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; and (2) 42 U.S.C. § 1983. With respect to state law, Plaintiffs also assert claims based on:  (1) the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1, *et seq.*; (2) the New Jersey Municipal Land Use Law, N.J. Stat. Ann. 40:55D-1, *et seq.*; and (3) the New Jersey constitution.  Plaintiffs seek monetary, declaratory and injunctive relief.

Defendants filed the current motion for partial summary judgment on January 13, 2006. Defendants argue that Plaintiffs' federal claims should be either dismissed or denied, and that the Court should dismiss the remaining state claims for lack of supplemental jurisdiction.

**II.     DISCUSSION**

    **A.     Standard for a Motion for Summary Judgment**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*,

79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). The court must award summary judgment on all properly supported issues identified by the moving party, except those for which the non-moving party has provided evidence to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324. In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Nature of Plaintiffs' Federal Claims

In asserting their federal claims, Plaintiffs allege that "[t]he actions of Defendants in enacting the [] Ordinances violate the Fair Housing Act in that they intentionally discriminate in the provision of rental housing based on familial status." (Compl. ¶30.) They further allege that "there will be a disparate impact . . . on African Americans and Hispanics and young adults since limiting rental housing to one [Certificate] per year will significantly impact those units occupied by [members of those groups] and dramatically reduce the availability of those units to rent in Long Branch." (*Id.* ¶31.) Plaintiffs also allege that "there will be a disparate impact on the basis of familial status since sales are generally to blood related families and rentals are, more often than not, to groups unrelated by blood or marriage." (*Id.* ¶32.)

Plaintiffs further allege that Defendants' enactment of the Ordinances violate their constitutional rights to due process and equal protection in a variety of ways. They include

5

"discriminat[ing] between owner occupied and non-owner occupied [properties] arbitrarily" and "discriminat[ing] between multiple sales and multiple rentals of the same property arbitrarily." (*Id.* ¶39.)  Plaintiffs allege other violations, but largely in conclusory form, and without specifying which party suffered what injury.  Despite the complaint's lack of specificity, it appears that Plaintiffs allege distinct injuries to property owners, current tenants and prospective tenants.  (*See id.*)

        **C.**        **Plaintiffs' Standing to Assert the Federal Claims**

"The requirement that a party have standing flows from the Article III requirement of a 'case or controversy.'"  *Pub. Interest Res. Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 70 (3d Cir. 1990).  "Standing analysis focuses on whether 'a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'"  *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972)).

Under certain circumstances, an association may have standing to bring suit on behalf of its members.  Such associational standing is appropriate where:  (1) the organization's members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.  *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  "For an organization to have standing, a plaintiff-member must show:  (1) injury in fact, an invasion of a legally protected interest which is concrete and particularized and actual or imminent; (2) a causal link between the defendant's conduct and the injury, such that the conduct is 'fairly traceable' to that conduct; and (3) the likelihood that judicial relief will redress the plaintiff's injury."  *Pub. Interest Res. Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997).

"The party invoking federal jurisdiction bears the burden of establishing these elements."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* See also *Fair Housing Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 76 (3d Cir. 1998) (holding that plaintiff failed its burden in proving that it had standing despite adequately alleging standing in its complaint because "something more than these naked allegations was required at the summary judgment stage").

Here, Plaintiff Long Branch Citizens' standing is asserted to be based on the standing of its members, namely, owners of properties located in Long Branch, as well as both current and prospective tenants. The individual Plaintiffs allegedly fall within one of these three categories as well. (*See* Compl. ¶¶2-3.)

### 1. Whether Plaintiffs Have Satisfied the Injury-In-Fact Requirement

To satisfy the injury-in-fact requirement, Plaintiffs must show that they – or in the case of Long Branch Citizens, its members – have either suffered actual injury or are threatened with injury that is imminent. Here, none of the Plaintiffs can assert actual injury because the City of Long Branch has stayed the enforcement of the Ordinances until this litigation is resolved. Plaintiffs instead argue that they are threatened with injury that is imminent.

#### a. Plaintiffs' Burden in Establishing Injury-In-Fact Through a Showing of Imminent Harm

"When a plaintiff claims that a defendant's threatened injury is the source of his standing, he must show that the threatened injury is so imminent as to be 'certainly impending.'" *Magnesium Elektron*, 123 F.3d at 122 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155-58 (1990)). "The imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms." *Id.* To make such a showing in response to a motion for

summary judgment, the plaintiff must "submit affidavits or other evidence showing, through specific facts," that the plaintiff – or its members – would be "'directly' affected . . . " by the imminent harm. *Lujan*, 504 U.S. at 563.

      Notably, the Supreme Court in *Lujan* found that "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id.* at 561. According to the Court, when "[the] plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, . . . it becomes the burden of the plaintiff to adduce facts showing that [the third-party's] choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* at 562 (emphasis in original) (citations omitted). "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (citations omitted).

      In *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293 (3d Cir. 2003), the Third Circuit Court of Appeals addressed issues similar to the ones in this case. The plaintiffs in *Storino* sued a municipality for its adoption of an ordinance that prohibited certain types of uses for properties in designated areas. *Storino*, 322 F.3d at 295. Specifically, the ordinance prohibited the use of properties as rooming or boarding houses in certain residential zones, as well as their use as hotels or motels in a designated commercial zone. *Id.*

      The plaintiffs asserted standing based on their ownership of at least one rooming house in the City. *Id.* They claimed that they were injured by the adoption of the ordinance "because their current rooming/boarding house and hotel/motel uses will be 'zoned out of existence' in time and because they will have to seek a variance for any modifications to their property in the future." *Id.* The plaintiffs sought recovery based on federal and state claims. *Id.* In their federal claim, the plaintiffs argued that by prohibiting these uses in certain zones in the municipality, the

8

ordinance excluded low and moderate income persons in violation of the Equal Protection Clause.  *Id.*

The Court of Appeals found that the plaintiffs lacked standing because they did not satisfy the injury-in-fact requirement.  The court noted that the plaintiffs failed to assert "that their ownership interests have actually been affected by the adoption of the [o]rdinance."  *Id.* at 297.  Under the Municipal Land Use Law, N.J. Stat. Ann. § 40:55D-1, *et seq.*, the plaintiffs' non-conforming uses were deemed to have acquired a vested right to continue in their previous form regardless of the new zoning provisions.  *Id.*  The plaintiffs argued, however, that although the ordinance permitted the non-conforming uses to continue, they would suffer prospective damages because the municipality was permitted by law to limit the plaintiffs' non-conforming uses, *i.e.*, by requiring that they apply for variances.  *Id.*

The court rejected the plaintiffs' argument.  According to the Court of Appeals, "[t]his allegation of future damage is insufficient to accord [the plaintiffs] standing to assert their federal claim . . . because it is conjectural."  *Id.*  The court identified a number of ways in which the plaintiffs' alleged injury-in-fact was contingent on hypothetical circumstances.  Specifically, the court noted:  (1) the lack of actual or proposed laws or regulations by the municipality requiring variances as the plaintiffs feared; (2) the plaintiffs' lack of plans that might require applying for variances; (3) the potentially lengthy period of time before the plaintiffs might suffer the alleged injury; and (4) the possibility that they might sell their ownership interests.  *See id.*  The court observed that "one cannot describe how [the plaintiffs] will be injured without beginning the explanation with the word 'if.'"  *Id.* at 297-98.

Like the plaintiffs in *Storino*, and for the reasons identified in *Lujan*, the threatened injuries that Plaintiffs allege are too conjectural to permit their standing to bring this action.

       b.  **Plaintiffs Fail to Demonstrate Imminent Harm With Respect to Property Owners**

  Plaintiffs fail to show that, as a result of the Ordinances, property owners are threatened with injury that is imminent. The alleged harm to the owners would be the denial of a second Certificate. But if an owner lives, or decides to live, in the property for a portion of the year, that property could qualify for one of the numerous exceptions provided by Ordinance 26-04. According to the Ordinance:

> Exceptions to the one Certificate of Occupancy per year maximum shall be considered for the following: (1) a permanent resident seeking to travel and rent his or her property on a seasonal basis; (2) a bona fide family unit, a member of which owns the property and uses said property for seasonal occupancy may apply for an exception to the one Certificate of Occupancy per year maximum to rent the premises for the remainder of the year to a family as defined [in a separate ordinance]; (3) if the owner of property in the [designated zoning districts] dies, his executor/executrix can rent out the premises temporarily to a family unit as described in the Ordinance until it can be sold or otherwise disposed of; and (4) any other bona fide factual scenario upon which an applicant seeks an exception as determined by the Fire Official.

(Ordinance 26-04.) Moreover, a denial of an application for a second Certificate may be appealed in New Jersey Superior Court. (*Id.*)

  These exceptions are limited, however, to owner-occupied properties. (*See id.* ("[t]here shall not be an exception granted to properties within the [relevant] residential zoning districts that are not owner-occupied").) But even for properties not occupied by their owners, no second Certificate would be necessary if the owner rents, or decides to rent, for a 12-month period or more.

  Additionally, the one-Certificate limit does not apply if the property – regardless of whether the owner occupies the property – is sold after a rental. (*See* Ordinance 26-04 ("[t]he [relevant] zones within the residential zoning districts of the [City], shall be limited to one Certificate per year for the entire premises except upon bona fide sale to a third party with no subletting of the interest in the premises set forth in this Ordinance").).

  The only evidence in the record suggesting that some non-occupant owners might suffer

injury from the one-Certificate limit is a certified statement that "[s]ome of the properties are rented to students in the winter and blood related families in the summer[,]" and that two Certificates are necessary because "[o]ne is obtained in June for the summer occupancy and the other is obtained in September for the winter occupancy." (Fox Cert. ¶3.) That generalized observation, without more, does not satisfy Plaintiffs' burden because it does not identify the individuals that will be affected, or their plans for the future that will subject them to the harm. *See Lujan*, 504 U.S. at 563 (holding that to show imminent harm to their members, the plaintiffs "had to submit affidavits or other evidence showing, through specific facts . . . that one or more of [their] members would . . . be 'directly' affected . . . "). Even current non-occupant owners may decide, for example, to sell their properties for any number of reasons, rent for 12-month periods or live in their properties on a seasonal basis. In light of these possibilities, and in the absence of contrary facts, Plaintiffs fail to show that such non-occupant property owners face imminent harm. *See id.* at 564 ("'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require") (emphasis in original).

For these reasons, Plaintiffs fail to establish, through specific facts in the record, that any of Long Branch's property owners face "concrete and particularized" harm that is "so imminent as to be 'certainly impending.'" *Magnesium Elektron*, 123 F.3d at 119, 122 (quoting *Whitmore*, 495 U.S. at 155-58).

        c.     **Plaintiffs Fail to Demonstrate Imminent Harm With Respect to Tenants**

Plaintiffs also fail to show that current or prospective tenants will in fact be injured by enforcement of the Ordinances. The alleged injury to them would be the denial of housing for unlawful reasons. But Plaintiffs fail to show that any tenants face the imminent threat of being denied housing. Students who want to rent for less than a 12-month period, for example, could

11

rent from owner-occupants whose properties might qualify for a second Certificate under the exceptions provided by the Ordinances.

The only tenants that could arguably be said to face imminent harm are those who plan to rent properties owned by non-occupying owners, which properties are not permitted a second Certificate. But Plaintiffs fail to provide affidavits or other evidence showing that particular tenants plan to rent only from such owners, or that renting from such owners is the only option available to them. *See Lujan*, 504 U.S. at 563. Based on the current record, it is quite possible that the rental market in Long Branch will sufficiently accommodate the needs of student residents such that no harm would follow, even with the enforcement of the Ordinances.

In short, enforcement of the Ordinances might not, in fact, result in the injuries that Plaintiffs allege with respect to owners, current tenants or prospective tenants. In light of that possibility, and in the absence of specific facts showing that its members are in fact threatened with imminent harm, the Court finds that Long Branch Citizens has failed to satisfy the injury-in-fact requirement for standing. For the same reasons, the remaining Plaintiffs also lack standing.

### D. Plaintiffs' Remaining State Law Claims

A district court may, in its discretion, decline to exercise supplemental jurisdiction over state claims if the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) ("[i]n enacting section 1367, Congress intended to enhance a district court's ability to gain jurisdiction over pendent claims and parties while providing those courts with the discretion to decline to exercise supplemental jurisdiction in several express circumstances"); *Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996) (holding that the district court did not abuse its discretion in dismissing the remaining state law claims after it dismissed the federal claims). Here, Plaintiffs' federal claims should be dismissed, and all that remains are their state law claims. The Court finds it appropriate to

dismiss those remaining state claims without prejudice.

### III.     CONCLUSION

For the above reasons, Defendants' motion for partial summary judgment is granted.  An appropriate form of order is filed herewith.

Dated:   April 18, 2006

                                                 s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.